DUGAS *v*. MUNISING, M. & S. E. RAILWAY CO.

1. RAILROADS—NEGLIGENCE — CROSSINGS — CATTLE GUARDS — CONTRIBUTORY NEGLIGENCE.

> Where plaintiff, returning home from a village in Marquette county on a dark and stormy night in winter, because of a heavy fall of snow, was not able to guide the horses, but permitted his team to have their heads and follow the road by instinct, and, at a point in the highway at which defendant railroad crossed it diagonally, the team diverged from the road, following the track for some distance, when they encountered and were struck by a train, he was guilty of contributory negligence, barring a recovery for the personal injuries which he sustained; defendant's negligence in failing to have statutory safeguards and fence at the crossing was not a sufficient reason for permitting plaintiff to recover.

2. SAME—DUTY TO LOOK AND LISTEN.

> One should exercise as much caution about remaining upon a railroad track as in going on it, and upon plaintiff's testimony that he looked for a train on arriving at the crossing but did not thereafter ascertain whether or not he had crossed, the trial court was right in directing a verdict for defendant.

Error to Marquette; Flannigan, J. Submitted October 21, 1915. (Docket No. 39.) Decided December 22, 1915.

Case by Peter Dugas against the Munising, Marquette & Southeastern Railway company for personal injuries and damages to team and sleigh. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Joseph H. Primeau, Jr.,* and *Le Gendre & Driscoll,* for appellant.

*William P. Belden* and *Thomas Clancey,* for appellee.

PERSON, J.   The plaintiff brings this action to recover damages which he claims were caused by certain acts of negligence on the part of the defendant railway company, and without any contributing negligence upon his part.   The case was disposed of in the court below upon the latter part of the proposition, and consideration of the matter in this court will be confined to that phase of the case.

The plaintiff, on the 13th day of January, 1912, was returning from a village in Marquette county, called New Swanzy, to his home about eight miles distant. The road which he was traveling ran easterly from the village, on the northerly side of the railroad track for about half a mile, when it turned and crossed the track at something less than a right angle, then continued its course easterly on the south side of the railroad and in very close proximity to it.   In some places the highway was not more than 6 or 8 feet from the track and in other places it got away from it as much as 25 feet.   There were from 6 inches to 18 inches of snow upon the ground—the witnesses differing as to this—and the plaintiff was driving a span of horses hitched to a sleigh.

It was about 8 o'clock in the evening when he left New Swanzy, the night was dark and cold, and the snow was blowing and drifting to a considerable extent.   Plaintiff sat upon the bottom of his sleigh, well wrapped up to protect him from the cold, and holding the lines in his hands.   He says that he knew when he reached the railroad crossing and looked to see if any train was approaching.   He was, however, letting his horses have pretty much their own way in following the road, thinking, as he says, it was safer, in the dark, to trust to their intelligence than to attempt to guide them.   The railroad right of way was entirely unfenced and without cattle guards or wing fences approaching the guards, and this was well known to

plaintiff. The failure to construct fences and cattle guards is the principal negligence charged against the defendant. When plaintiff's horses reached the railroad track they did not, as he says he supposed they would, follow the highway across the track, but, on the contrary, turned directly upon the railroad track, and continued in an easterly direction between the rails. Plaintiff, sitting on the bottom of the sleigh, did not observe the course his horses were taking, but supposed all of the time that they were still following the highway, which, as has been stated, ran very closely along the south side of the railroad track. When he had proceeded about a mile between the rails, he noticed the headlight of a train approaching him from the east, but, still thinking that he was in the highway, he continued to watch the approaching headlight, and had got about 50 feet into a cut, which was some 4 feet deep, when the engine struck the horses, killing them both, and throwing the plaintiff upon the ground outside of the track, with a broken leg and other injuries.

The circuit judge instructed the jury that the plaintiff could not recover damages for any injury that he had received to his person; but, by consent of counsel for the railroad company, he was allowed damages for the loss of his horses and the injury to his sleigh and harness. Damages for injury to his property is not in question here, and the controversy turns upon the correctness of the court's instruction that the plaintiff cannot recover for the injuries to his person, because of his own contributory negligence. This is not an instance where the absence of railroad fences and cattle guards misled the plaintiff as to the location of the railroad tracks. He knew when he was approaching the crossing, and looked, he says, to see if a train was coming from either way. It was as much his duty to have assured himself that he was over the

crossing, as it was to assure himself that he might safely go upon it. One should exercise as much caution about remaining upon a railroad track as in going upon it. In this case, however, the plaintiff took no care to see that he had gotten off the track, but left that matter entirely to the knowledge or instinct of his horses, which he was not justified in doing.

The other charges of negligence, averred in the declaration, and mentioned by counsel in their brief, do not seem to be supported by evidence.

The judgment is affirmed.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.